## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**SHELLEY L. STANGLER, P.C.**
**155 MORRIS AVENUE, 2ND FLOOR**
**SPRINGFIELD, NJ 07081**
**PHONE (973) 379-2500 FAX (973) 379-0031**
**Attorney for Plaintiff**
**Attorney ID#: 023191987**

---

| | |
|---|---|
| ANTHONY T. FONTANEZ, )<br><br>              Plaintiff, )<br><br>   -vs- )<br>)<br>MARCUS O. HICKS, ESQ., **FORMER** )<br>COMMISSIONER OF THE NEW JERSEY STATE )<br>DEPARTMENT OF CORRECTIONS, in his official )<br>and individual capacities, FORMER NORTHERN )<br>STATE PRISON WARDEN STEVEN JOHNSON, in )<br>his official and individual capacities, **ASSISTANT** )<br>**SUPERINTENDANT ANTHONY GANGI, in his** )<br>official and individual capacities, NORTHERN )<br>**STATE PRISON ADMINISTRATOR GEORGE** )<br>**ROBINSON,** in his official and individual capacities, )<br>"JOHN DOE" ADMINISTRATOR of the )<br>NORTHERN STATE PRISON, in his official and )<br>individual capacities, **LT. EMMANUEL YOUSSEF, in** )<br>his official and individual capacities, SGT. PAUL )<br>ADAMSON, in his official and individual capacities, )<br>SGT. ERNESTO HERNANDEZ, in his official and )<br>individual capacities, LT. BRIAN SOBUN, in his )<br>official and individual capacities, SGT. QIANA )<br>ROBINSON, in her official and individual capacities, )<br>SGT. RICARDO WILLIAMS, in his official and )<br>individual capacities, CORRECTION OFFICER )<br>JEREMY BALTIMORE, in his official and individual )<br>capacities, CORRECTION OFFICER CARL )<br>O'NEILL, in his official and individual capacities, )<br>CORRECTION OFFICER KENNY SOLAZANO, in )<br>his official and individual capacities, CORRECTION )<br>OFFICER CESAR MASCHANG, in his official and )<br>individual capacities, CORRECTION OFFICER )<br>ERIC OLEKA, in his official and individual capacities, )<br>CORRECTION OFFICER EDWIN SIMMONS, in his )<br>official and individual capacities, CORRECTION )<br>OFFICER WILLIAM GALLAGHER, in his official )<br>and individual capacities, CORRECTIONS OFFICER )| **CIVIL ACTION**<br><br>**CASE NO: 2:20-cv-20286-KSH-CLW**<br><br>**FIRST AMENDED COMPLAINT, JURY DEMAND, DEMAND TO IDENTIFY JOHN DOE DEFENDANTS, AND DEMAND TO PRESERVE EVIDENCE** |

**RONDELL BRIGGS, in his official and individual capacities, CORRECTIONS OFFICER ALGENI POZO, in his official and individual capacities, CORRECTIONS OFFICER DARIUS COLLINS, in his official and individual capacities, CORRECTIONS OFFICER EUGENE VICK, in his official and individual capacities, CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities, (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over FONTANEZ and/or who had personal involvement in the incident alleged in the complaint),**

**Defendants.**

Plaintiff, **ANTHONY T. FONTANEZ ("FONTANEZ")**, as and for his complaint against Defendants, **MARCUS O. HICKS, ESQ., FORMER COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, ASSISTANT SUPERINTENDANT ANTHONY GANGI, in his official and individual capacities, NORTHERN STATE PRISON ADMINISTRATOR GEORGE ROBINSON, in his official and individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his/her official and individual capacities, LT. EMMANUEL YOUSSEF, in his official and individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual**

2

capacities, **CORRECTION OFFICER CARL O'NEILL, in his official and individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and individual capacities, CORRECTION OFFICER ERIC OLEKA, in his official and individual capacities, CORRECTION OFFICER EDWIN SIMMONS, in his official and individual capacities, CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities,** CORRECTIONS OFFICER RONDELL BRIGGS, in his official and individual capacities, CORRECTIONS OFFICER ALGENI POZO, in his official and individual capacities, CORRECTIONS OFFICER DARIUS COLLINS, in his official and individual capacities, CORRECTIONS OFFICER EUGENE VICK, in his official and individual capacities, **CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities** and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities, (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over FONTANEZ and/or who had personal involvement in the incident alleged in the complaint), alleges as follows:

## PARTIES

1.    At all relevant times herein, Plaintiff, **ANTHONY T. FONTANEZ ("FONTANEZ"** or **"Plaintiff"),** was and is an inmate under the custodial care of the State of New Jersey, Department of Corrections, and currently incarcerated New Jersey State Prison, operated by the New Jersey State Department of Corrections ("DOC") and located at 1300 Stuyvesant Ave, Trenton, New Jersey 08618.

3

2.      At all relevant times herein Defendant, **MARCUS O. HICKS, ESQ. ("HICKS"),** sued in his official and individual capacities, was the Commissioner of the New Jersey State Department of Corrections or Acting Commissioner with a place of business at Whittlesey Road, Trenton, Mercer County, New Jersey 08625, acting under color of law and within the scope of his employment, who was the chief supervisory official and executive of the DOC, with direct responsibility for development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at all correctional facilities within the DOC, including Northern State Prison ("NSP"); policies and procedures relating to the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP**;** and ensuring that Corrections Officers adhere to all Attorney General Guidelines and laws, including but not limited to the United States Constitution and the New Jersey State Constitution.

3.      At all relevant times herein Defendant, **STEVEN JOHNSON ("JOHNSON"),** sued in his official and individual capacities**,** was the Warden of the NSP with a principal place of business at 168 Frontage Road, Newark, New Jersey 07124, acting under color of law and within the scope of his employment, who was responsible for operations as well as the custody and care of inmates housed at NSP; the development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at NSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP**,** in particular having the duty to ensure that policies relating to the use of force and provision of medical care were enforced as well as ensuring the submission of true and accurate reports.

4.      At all relevant times herein defendant, **ASSISTANT SUPERINTENDENT ANTHONY GANGI**, sued in his official and individual capacities**,** was an Administrator of the NSP with a principal place of business at 168 Frontage Road, Newark, New Jersey 07124, acting

4

under color of law and within the scope of his employment, who was responsible for operations as well as the custody and care of inmates housed at NSP; the development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at NSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP, in particular having the duty to ensure that policies relating to the use of force and provision of medical care were enforced and to ensure the proper submission of accurate and truthful reports.

5.    At all relevant times herein defendant **NORTHEN STATE PRISON ADMINISTRATOR GEORGE ROBINSON**, sued in his official and individual capacities, was an Administrator of the  NSP with a principal place of business at 168 Frontage Road, Newark, New Jersey 07124, acting under color of law and within the scope of his employment, who was responsible for operations as well as the custody and care of inmates housed at NSP; the development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at  NSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP, in particular having the duty to ensure that policies relating to the use of force and provision of medical care were enforced and to ensure the proper submission of accurate and truthful reports.

6.       At all relevant times herein defendant **"JOHN DOE" ADMINISTRATOR ("THE ADMINISTRATOR")**, sued in his official and individual capacities, was an Administrator of the NSP with a principal place of business at 168 Frontage Road, Newark, New Jersey 07124, acting under color of law and within the scope of his employment, who was responsible for operations as well as the custody and care of inmates housed at NSP; the development, promulgation, and implementation of policies and procedures relating to the

5

custody and care of prisoners housed at NSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP, in particular having the duty to ensure that policies relating to the use of force and provision of medical care were enforced and to ensure with the proper submission of accurate and truthful reports.

7.      At all relevant times herein defendant **LT. EMMANUEL YOUSSEF,** sued in his official and individual capacities was a supervisor and commanding officer at NSP with supervisory authority and oversight over  lesser ranking officers and corrections officers with responsibility for enforcing and implementing policies and procedures relating to the custody and care of prisoners housed at NSP, for ensuring safety and security at NSP, for operations and management over the jail, including the enforcement and implementation of policy relating to the use of force, the provision of medical care, and to ensure the proper submission of accurate and truthful reports.

8.      At all relevant times herein defendant **SGT. PAUL ADAMSON**, sued in his official and individual capacities, was a supervisor at NSP with supervisory authority and oversight over  lesser ranking officers and corrections officers with responsibility for enforcing and implementing policies and procedures relating to the custody and care of prisoners housed at NSP, for ensuring safety and security at NSP, for operations and management over the jail, including the enforcement and implementation of policy relating to the use of force, the provision of medical care, and to ensure the proper submission of accurate and truthful reports.

9.      At all relevant times herein defendant **SGT. ERNESTO HERNANDEZ**, sued in his official and individual capacities, was a supervisor at NSP with supervisory authority and oversight over  lesser ranking officers and corrections officers with responsibility for enforcing and implementing policies and procedures relating to the custody and care of prisoners housed at

6

NSP, for ensuring safety and security at NSP, for operations and management over the jail, including the enforcement and implementation of policy relating to the use of force, the provision of medical care, and to ensure the proper submission of accurate and truthful reports.

10.     At all relevant times herein defendant **LT. BRIAN SOBUN**, sued in his official and individual capacities, was a supervisor and commanding officer at NSP with supervisory authority and oversight over  lesser ranking officers and corrections officers with responsibility for enforcing and implementing policies and procedures relating to the custody and care of prisoners housed at NSP, for ensuring safety and security at NSP, for operations and management over the jail, including the enforcement and implementation of policy relating to the use of force, the provision of medical care, and to ensure the proper submission of accurate and truthful reports.

11.     At all relevant times herein defendant **SGT. QIANA ROBINSON,**  sued in her official and individual capacities, was a supervisor  at NSP with supervisory authority and oversight over  lesser ranking officers and corrections officers with responsibility for enforcing and implementing policies and procedures relating to the custody and care of prisoners housed at NSP, for ensuring safety and security at NSP, for operations and management over the jail, including the enforcement and implementation of policy relating to the use of force, the provision of medical care, and to ensure the proper submission of accurate and truthful reports.

12.     At all relevant times herein defendant **SGT. RICARDO WILLIAMS,**  sued in his official and individual capacities, was a supervisor  at NSP with supervisory authority and oversight over  lesser ranking officers and corrections officers with responsibility for enforcing and implementing policies and procedures relating to the custody and care of prisoners housed at NSP, for ensuring safety and security at NSP, for operations and  management over the jail,

including the enforcement and implementation of policy relating to the use of force, the provision of medical care, and to ensure the proper submission of accurate and truthful reports.

13.     At all relevant times herein **CORRECTION OFFICER JEREMY BALTIMORE ("BALTIMORE"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**.

14.     At all relevant times herein **CORRECTION OFFICER CARL O'NEILL ("O'NEILL"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

15.     At all relevant times herein **CORRECTION OFFICER KENNY SOLAZANO ("SOLOZANO"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

16.     At all relevant times herein **CORRECTION OFFICER CESAR MASCHANG ("MASCHANG"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

17.     At all relevant times herein **CORRECTION OFFICER ERIC OLEKA ("OLEKA"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

18.     At all relevant times herein **CORRECTION OFFICER EDWIN SIMMONS ("SIMMONS"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

19.     At all relevant times herein **CORRECTION OFFICER WILLIAM GALLAGHER ("GALLAGHER"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

20.     At all relevant times herein **CORRECTIONS OFFICER RONDELL BRIGGS ("BRIGGS"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on January 6, 2019, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**.

21.     At all relevant times herein **CORRECTIONS OFFICER ALGENI POZO ("POZO"),** sued  in his official and individual capacities,  was a corrections officer on duty at NSP on November 18, 2018, responsible for the custody and care of prisoners housed at  NSP, including plaintiff **FONTANEZ.**

22.     At all relevant times herein **CORRECTIONS OFFICER DARIUS COLLINS ("COLLINS"),** sued  in his official and individual capacities,  was a corrections officer on duty at NSP on November 18, 2018, responsible for the custody and care of prisoners housed at  NSP, including plaintiff **FONTANEZ.**

23.     At all relevant times herein **CORRECTIONS OFFICER EUGENE VICK ("VICK"),** sued  in his official and individual capacities, was a corrections officer on duty at NSP

on November 18, 2018, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

24.     At all relevant times herein **CORRECTIONS OFFICER ROBERTO VILLAREAL ("VILLAREAL"),** sued in his official and individual capacities, was a corrections officer on duty at NSP on November 18, 2018, responsible for the custody and care of prisoners housed at NSP, including plaintiff **FONTANEZ.**

25.     **CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities** are as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over **FONTANEZ** and/or who had personal involvement in the incident alleged in the complaint.

26.     Defendants **HICKS, JOHNSON, GANGI, ROBINSON** and **JOHN DOE ADMINISTRATOR** may be referred to collectively as the "**POLICY MAKER DEFENDANTS."**

27.     Defendants **YOUSSEF, ADAMSON, HERNANDEZ, SOBUN, ROBINSON** and **WILLIAM**S may be referred to collectively as the "**FIELD SUPERVISOR"** or "**SUPERVISORY DEFENDANTS."**

28.     Defendants **BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, BRIGGS, POZO, COLLINS, VICK** and **VILLAREAL** may be referred to collectively as the "**CORRECTION OFFICER DEFENDANTS**."

## II. NATURE OF THE ACTION

29.     **FONTANEZ** institutes this action for compensatory and punitive damages for the violation of both federal and state constitutional rights and pendent state claims in the use of

10

excessive force by corrections officers at the Northern State Prison on January 6, 2019, force that was arbitrary, capricious, brutal, and lacking in any justification or need to control or maintain safety at the jail.

30.     Plaintiff further brings this action to recover damages for the violation of both federal and state constitutional rights and pendent state claims for the failure to provide proper medical attention along with the filing of false and inaccurate reports, specifically Special Custody and other reports evidencing a depraved indifference to the welfare and safety of Fontanez, and designed to deny him the right to pursue his claim as protected by the First Amendment to the U.S. Constitution and under  Article I of the New Jersey Civil Rights Act by covering up the truth, as well as resulting in arbitrary and capricious charges leaving to unjustified punishment by jail officials.

31.     Plaintiff also seeks to recover damages for the **POLICYMAKER DEFENDANTS'** deliberate indifference to the constitutional rights of Plaintiff evidenced by their toleration and acquiescence of the use of random, unjustified and excessive force,  in their failure to ensure that subordinates provided appropriate medical care to inmates, in their failure to ensure that truthful and accurate reports be filed,  as well as their failure to properly hire, train, supervise and discipline corrections officers, many of whom have a history of abusing prisoners, as documented in prior lawsuits and, on information and belief, Internal Affairs investigations.

32.     The unlawful actions and conduct of the defendants evidenced a depraved and deliberate indifference to the clearly established constitutional rights of **FONTANEZ,** protected and secured by the provisions of the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and under the laws of the United States, brought pursuant to the Civil Rights Act, Title 42 of the United States Code, § 1983.

33.     This action is also brought pursuant to the New Jersey Civil Rights Act, Title 10 of the New Jersey Statutes for violations under the New Jersey Constitution, Article 1, §1,  as well as state causes of action sounding in negligence, assault/battery, intentional infliction of emotional distress and civil conspiracy.

34.      As a direct and proximate result of the constitutional violations and negligence **FONTANEZ** suffered severe injuries, including but not limited to a broken right ankle requiring open reduction surgery, a broken nose,  fractured ribs, facial and other injuries, along with post-traumatic stress disorder and emotional distress..

### III. JURISDICTION

35.      This Court has jurisdiction pursuant to Title 28 of the United States Code, §§1331, 1332, 1343 (2), 1343 (3), 1343 (4), and Title 42 of the United States Code, Section 1983, as well as pendent jurisdiction under 28 U.S.C. §1367 to adjudicate Plaintiff's causes of action on the state and common law claims.

36.     In addition, Plaintiff seeks attorney's fees and costs pursuant to 42 U.S.C. §1988 for his federal claims and N.J.S.A. 10:5-27.1, N.J.S.A. 10:6-2(c) and N.J.S.A. 34:19-5(c) for his state law claims.

37.     Venue is properly laid in the United States District Court of the District of New Jersey pursuant to Title 28, United States Code §1391 (b) in that all of the acts complained of herein occurred in this District and each and every Defendant is a citizen of, resides in or is a public entity of the State of New Jersey and domiciled within this district.

38.     The matter in controversy herein involves, exclusive of interest, an amount in excess of $75,000.

39.     On March 22, 2019 **FONTANEZ** served a Notice of Claim under the Tort Claims

Act, N.J.S.A. Title 59.  Six (6) months have elapsed since the filing of the Notice of Claim without adjustment or resolution of the claim.

40.   All conditions precedent to suit under Title 59 of the New Jersey Statutes, both with regard to the Notice of Claim and injury/medical bills claims have been met.

## IV. <u>FACTUAL ALLEGATIONS</u>

41.   On January 6, 2019 the 30 year old male plaintiff was incarcerated at the DOC's facility in Newark, Northern State Prison ("NSP").

42.   Prior to January 6, 2019 Plaintiff **FONTANEZ** began having difficulties with the corrections staff, notably defendants **CO BRIGGS, CO POZO, CO COLLINS, CO VICK, CO VILLAREAL** and **JOHN DOES 1-10.**   Defendants would prohibit Plaintiff and other inmates from taking showers during their designated periods for doing so, every other day.  Plaintiff would complain frequently, in particular to **BRIGGS, COLLINS** and/or other officer defendants upon information and belief defendants **POZO, VICK,  VILLAREAL** and **JOHN DOES 1-10** (collectively, the "**CORRECTION OFFICER DEFENDANTS**") without resolution. Instead, without being permitted his shower, Plaintiff was told to go to recreation by these defendants and other corrections officers.

43.   On one occasion, January 6, 2019, after being told to go to recreation, Plaintiff attempted to take a shower but was told he could not have one. Defendant **VILLAREAL** was the officer in charge of the housing Wing on that day.

44.   Plaintiff **FONTANEZ** and his cellmate William Vargas went to take a shower. When they came out defendants **COLLINS, BRIGGS, VILLAREAL** and supervisor defendant **ADAMSON**, among others, handcuffed them and/or  escorted them to lock up in a holding area.

45.   Both **FONTANEZ** and Vargas complied as ordered.

46.   Thereafter, Defendant **COLLINS** During the handcuffing procedure the **CORRECTION OFFICER DEFENDANTS** went into **FONTANEZ's** cell and intentionally without basis poured disinfectant, bleach and other toxic substances in it, including all over his clothing,  threw all his property around and destroyed the cell.

47.   Plaintiff then refused to go into the cell because of the dangerous and foul smelling fumes.  He asked to speak to a supervisor but was rebuffed by **COLLINS** who refused his entreaties to have a supervisor deal with the situation.

48.   Instead, defendants **COLLINS, BRIGGS, POZO, VICK**, **VILLAREAL** and/or other officers advised defendant supervisors **LT. YOUSSEF, LT. SUBON** and **SGT. ADAMSON** that **FONTANEZ** and Vargas refused to go into their cell and were simply belligerent and aggressive, as opposed to advising or reporting the truth – that **COLLINS** had intentionally trashed the cell and made it uninhabitable.

49.   No effort was made by any supervisor on duty that evening, around 6:30pm, to determine the cause for the problem, speak to the inmates, address the cause and de-escalate the situation or intervene with respect to defendant **COLLIN'S** blatent disregard for policy and outrageous behavior.   No effort was made by any supervisor at any time to address the known shower problem where the officer on duty would deny **FONTANEZ** and others shower privileges without cause or basis.   These supervisors included defendants **YOUSEFF, SUBON, ADAMSON, HERNANDEZ, SGT. ROBINSON**[1] and **WILLIAMS.**

50.   Neither did any **POLICYMAKER** defendant, those responsible for overall oversight, management and operations of the jail, defendants **O'HICKS**,  **JOHNSON, GANGI** and **ROBINSON**, make any effort to deal with the ongoing conduct of **COLLINS** and others

---

[1] Sgt. Qiana Robinson is to be distinguished from Warden/Administrator George Robinson.

who were refusing shower privileges and acting with blatent disregard for the rights and privileges of the inmates.

51.     After some kind of a code or communication occurred, heard by plaintiff on dispatch or radio, ~~about ten,~~ multiple corrections officers suited up in riot or similar gear came after **FONTANEZ** and used mace against him.  **FONTANEZ** ran naked into the shower to put water on his face to get the mace off, after which all he felt were clubs and batons knocking him in the head and upper body to the ground.

52.     Upon learning that **FONTANEZ** and Williams were refusing to get back into their cell, defendant **YOUSEFF** told Policymaker Defendant **GANGI**  who approved a double tier extraction involving two (2) teams of suited up officers to obtain compliance and get the inmates back in their cell.

53.     At no time did defendant **GANGI**  or **YOUSEFF** make any effort to obtain the true facts, speak to the inmates or attempt to deescalate or intervene after being advised that plaintiff wished to speak to a supervisor.

54.     Two (2) extraction teams were formed, one led by defendant **SGT. ADAMSON** and one by **SGT. HERNANDEZ**.

55.     The correction officers under their command were defendants **SIMMONS, POZO, VICK, GALLAGHER, BRIGGS, BALTIMORE, O'NEIL, SOLAZANO, MASCHANG** and **OLEKA**.

56.     **SGT. ROBINSON** and **SGT. RICARDO WILLIAMS** were assigned the task of filming the extractions.

57.     These defendant officers**, SIMMONS, POZO, VICK, GALLAGHER, BRIGGS, BALTIMORE, O'NEIL, SOLAZANO, MASCHAN**G and **OLEKA** were each

involved and responsible for the punching, kicking and beating of plaintiff **FONTANEZ** as well as his cellmate, William Vargas.

58.     **FONTANEZ** also recalls being dragged down the steps seeing blood, beaten and put into a wheelchair.  An official report notes that "there was a blood trail leading from the showers to the exit of the subject housing unit along with excessive water and garbage thrown about the tier and stairwell."

59.     The supervisor defendants **ADAMSON** and **HERNANDEZ** also were involved in the brutal beatings. In particular, **HERNANDEZ,** by his own account beat Plaintiff **FONTANEZ** with a baton.  In addition, OC spray was used against the Plaintiff.

60.     Defendant **BALTIMORE** took Plaintiff to the ground where the beating continued.

61.     The beatings and attack upon **FONTANEZ** were not necessary to subdue him or maintain prison safety or security and constitute an unlawful use of excessive force.

62.     By their own admissions, the official reports note that at no time was **FONTANEZ or** Vargas a threat to themselves or others.  All **FONTANEZ** wanted was to speak to a supervisor.

63.     The beating occurred in whole or in part while **FONTANEZ** was handcuffed, according to a statement by a witness.

64.     In addition to the official reports, upon information and belief, based upon phone calls to Plaintiff's mother J'nelle Harvey, the officers involved in all of the subject events including the brutal beating were defendants **BRIGGS, POZO, COLLINS, VICK, BALTIMORE, OLEKA, SOLAZANO, MASCHUNG, SIMMONS, O'NEILL, GALLAGHER and supervisors HERNANDEZ and ADAMSON.**

16

65.      At no time was plaintiff **FONTANEZ** resisting the officers physically or was combative. At no time was he fighting, swinging, punching or kicking any officer, including **BALTIMORE or SGT. HERNANDEZ.**

66.      Neither of the defendants assigned to film the extractions succeeding in videotaping them.  Defendant **SGT. ROBINSON** and her supervisor, defendant **LT. SOBUN,** concocted a false story that **ROBINSON** was caused to fall, or lose her balance and that the camera she was holding fell and malfunctioned.

67.      However, the Internal Affairs investigation revealed that such was not the case, that in fact there was no malfunction and no indication in viewing the limited footage that the camera angle was consistent with a fall.  Not only did defendant **SGT. ROBINSON** conveniently fail to video the incident, but when she finally did after the salient period has passed, she failed to film the Plaintiff, instead pointing the camera at the backs of the officers or at the wall, in violation of policy, procedure and protocol.

68.      **SGT. ROBINSON** failed to comply with policy, procedure and training in the manner in which she attempted to film the subject event.  Such failures are indicative not only of lack of training, but show, along with the actions of defendant **COLLINS** in trashing the cell and poisoning it with disinfectant and the actions of the defendants in both covering up **COLLINS'** wrongdoing and beating **FONTANEZ**, a pattern and practice of permitting and condoning continued misconduct to occur, resulting in the injuries and constitutional violations to the plaintiff **FONTANEZ.**

69.      Defendant **RICARDO WILLIAMS** was assigned the task of filming the escort video of inmate Vargas.

70.      Despite having this assignment, **WILLIAMS** failed to capture the incident as he

was not present.  He obtained a second camera after the escort to the infirmary was already in progress after the beatings, both of **FONTANEZ** and of Vargas.  Further, whatever he did manage to record was upside down.

71.     **WILLIAMS** then turned his camera over to **SGT. ROBINSON** as her "camera battery " was "failing."  This statement does not comport with either **SGT. ROBINSON'S** or **LT. SOBUN'S** statements made to investigators.

72.     Other failures in the filming process were the failure to introduce the extraction team and follow protocol in the handling of the cameras.

73.     As a direct and proximate result of the failure to have proper camera surveillance and filing of the subject event as required, plaintiff **FONTANEZ** was wrongfully charged, the gathering of important evidence was intentionally avoided,  his procedural due process rights were impacted and violated, and he was subjected to arbitrary, capricious and wrongful discipline, a substantive due process violation as well.

74.     **FONTANEZ** was wrongfully charged, convicted and punished for violating internal jail rules including the throwing bodily fluids, refusing to obey and tampering with a locking device/conduct that disrupts.  **FONTANEZ** was not guilty of these charges which a proper filming would have established.

75.     **FONTANEZ** was eventually taken to the infirmary where the **CORRECTION** and **FIELD SUPERVISOR DEFENDANTS** wanted to just bandage him up and not have him taken to the hospital.  However, a nurse upon information and belief did intervene and ordered an ambulance.

76.     After surgery Plaintiff was sent to Jersey State Prison.

77.     At no time during these or any other events did plaintiff **FONTANEZ** touch any

corrections officers, any of the **CORRECTION OFFICER DEFENDANTS** or **FIELD SUPERVISOR DEFENDANTS**, resist efforts to obtain cuffing or resist compliance with any orders.

78.     The assault by the **CORRECTION OFFICER** and **FIELD SUPERVISOR DEFENDANTS**, each one, was the direct result of a conspiracy evidenced by the code and dispatch ordered after Plaintiff refused to get into his cell after it was destroyed, who spoke to each other and planned and conspired to get suited up so that their identities would be concealed in order to accomplish the objectives of the conspiracy, namely to severely beat the Plaintiff and cause serious harm, and to "teach him a lesson."

79.     The **CORRECTION OFFICER DEFENDANTS, BRIGGS, POZO, COLLINS, VICKS, VILLAREAL, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER,** the **SUPERVISORY OFFICERS ADAMSON, HERNANDEZ, YOUSSEF, SOBUN** and **JOHN DOES 1-10,** the guards and supervisors responsible for the beating and either  trashing of the cell or covering the trashing and assault up and failing to report them, failed and refused to provide any medical attention to plaintiff after the beating, and left him in the infirmary without seeing to it that he was sent to the hospital for obviously needed care.

80.     At no time relevant hereto had Plaintiff threatened any corrections officers with harm.  He did, however, in response to the trashing of the cell by **COLLINS**, attempt to use water to avoid an impending attack by the multiple corrections officers and to ameliorate the fetid and toxic odors emanating from the cell.

81.     At no time were the actions by the guards in hitting **FONTANEZ** with a baton, kicking and punching him both before and after handcuffing  warranted or necessary to control

19

the inmate population or were needed to effectuate safety, protocol or control over the jail.

82.

Plaintiff was diagnosed and suffered as a direct and proximate result of the beating and assault by **BRIGGS, POZO, COLLINS, VICKS, VILLAREAL, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, ADAMSON, HERNANDEZ, SUBON** and **JOHN DOES 1-10,** at NSP multiple rib fractures, a broken nose, a fractured right ankle requiring open reduction surgery with plates, facial and other injuries.  He was hospitalized from January 6, 2019 to January 11, 2019.

83.    Plaintiff continues to suffer from his injuries, cannot sleep on a top bunk bed, and required and continues to require care including but not limited to X-Rays, MRIs  doctor's evaluations, medications and therapies such as physical therapy and steroid injections.

84.    Over the past two (2) years since the happening of the incident, Plaintiff **FONTANEZ** has and continues to request medical care for his injuries, inducing a proper evaluation and therapies for his leg and other parts of his body.

85.    **FONTANEZ** has continued to complain about the lack of diagnostic testing, has requested same and continues to be in pain without appropriate or limited action taken by the jail staff at every jail he has been transferred to, from South Woods State Prison to New Jersey State Prison.

86.    Plaintiff's continued pain, suffering, discomfort and damages is a direct and proximate result of the constitutional violations and conduct of the identified defendants who assaulted plaintiff and caused the injuries.

87.    The official reports filed in connection with the subject incident are riddled with inconsistencies, errors, are inaccurate and false.

88.     Interviews revealed that the altercation and problem arose after **FONTANEZ** and his cellmate Vargas were denied showers by their direct supervisors, who included defendants **VILLAREAL, COLLINS, BRIGGS, POZO** and **VICK.**

89.     Not one officer admitted in a report or acknowledged that there was a continued and known problem that these officers, among others, were regularly denying **FONTANEZ**, Vargas and others their showers, in violation of policy and protocol.

90.     Not one officer, in particular defendants **VILLAREAL, COLLINS, BRIGGS, POZO**, **VICK** and their supervisors, defendants **ADAMSON, HERNANDEZ, YOUSEFF** and **SOBUN,** acknowledged in their reports that **COLLINS** and others had been trashing plaintiff's cell and poisoning it with disinfectant and cleaning supplies, despite knowledge.   Photos and observations from the investigation alerted Internal Affairs (SID) that the cell had in fact been trashed and stunk of disinfectant/bleach.

91.     The reports regarding the videotaping and he inability to capture the incident were lacking in any accurate or truthful reporting by **SGT. ROBINSON** and **LT. SOBUN.**   An integrity test of the cameras revealed that they were all in good working order.   Further, "due to deficiencies identified in Custody Staff reports, cameras could not be identified as to which cameras recorded which footage."

92.     Defendant **VILLAREAL** denied there was a problem with the showers, noting in his interview that  Vargas and **FONTANEZ** "completed their showers and refused to return to their assigned cell."  He was unsure as to whether the cell had been "searched" or if "any Custody Staff entered the storage area for cleaning supplies."   As the officer directly responsible for the subject tier, **VILLAREAL** knew full well of **COLLINS**' misconduct and failed to report it, acknowledge it, or do anything about it.

21

93.     Defendant **COLLINS** failed to report his misconduct.  His report is untruthful.

94.     Defendant **COLLINS** was subject to a hearing regarding his conduct in an administrative hearing before the Office of Administrative Law (OAL), docket no: CSR 07720-2019N before the Hon. Ernest Bongiovanni, the disposition of which awaits discovery.

95.     Defendant **SGT. ADAMSON** alleged his  interview that he attempted to talk to the inmates **FONTANEZ** and Vargas, but that they would not listen to him, yet this conversation according to another officer took place prior to the trashing of the cell which led to the refusal of **FONTANEZ** and Vargas to go back into the cell.  Further, **ADAMSON** denied knowing about the trashing of the cell.  These statements were false and misleading, as **SGT ADAMSON** knew about the trashing of the cell and use of disinfectant and bleach to make it uninhabitable. Further, **SGT. ADAMSON** did not speak to **FONTANEZ** after **FONTANEZ** asked to speak to a supervisor.

96.     The various reports of the defendant officers, including but not limited to **HERNANDEZ, COLLINS, VILLAREAL, ADAMSON, YOUSSEF, SOBUN,  ROBINSON, WILLIAMS, BALTIMORE, OLEKA, SOLAZANO,** and             **MASCHUNG**         contained discrepancies and inaccuracies designed to cover up the misfeasance and the beating of **FONTANEZ.**

97.     The various reports of the defendant officers, including but not limited to **HERNANDEZ, COLLINS, VILLAREAL, ADAMSON, YOUSSEF, SOBUN,  ROBINSON, WILLIAMS, BALTIMORE, OLEKA, SOLAZANO,** and      **MASCHUNG** contained discrepancies and inaccuracies designed to prevent Plaintiff from being able to present a viable a proper case to a jury regarding the violation of his constitutional rights and other claims

98.     The failures to take proper video footage were designed to prevent Plaintiff from

22

being able to present a viable case to a jury regarding the violation of his constitutional rights and other claims.

## FIRST COUNT
## 42 U.S.C. §§ 1983 - individual liability

99.     Plaintiff repeats and realleges each and every paragraph contained in the Complaint and incorporates same as if set forth fully herein at length.

100.    **FONTANEZ** had a right under the Fourth Amendment of the United States Constitution to be free from and protected from the use of excessive force.

101.    **FONTANEZ,** as a convicted incarcerated person**,** had a right under the Fourteenth and Eighth Amendments of the United States Constitution to receive adequate medical care and to be free from cruel and unusual punishment.

102.    **FONTANEZ** had a right under the First Amendment to the United States Constitution to be free of harassment and the use of excessive force in retaliation for complaining about wanting to take a shower; he also had a First Amendment right to access to the courts without impediment ~~in the failure to identify defendants~~ caused by the filing of inaccurate official reports and interviews.

103.    **FONTANEZ** had a liberty interest in bodily integrity protected by the Due Process Clauses both substantive and procedural of the Fifth and Fourteenth Amendments of the United States Constitution.

104.    The aforementioned rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution were each clearly established as of January 8, 2019.

**Constitutional Violations by the POLICY MAKER DEFENDANTS**

105.    At all relevant times herein defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10,** their employees, agents and representatives were acting under color of law under the state and federal constitutions, laws, charters, ordinances, rules, regulations, customs, usages and practices of the State of New Jersey and its agency the DOC.

106.    At all relevant times all of the identified **CORRECTION OFFICER DEFENDANTS** and **SUPERVISOR DEFENDANTS** and **JOHN DOES 1-10** were acting under color of law under their authority as state corrections officers.

107.    The **POLICYMAKER DEFENDANTS HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10,** knew, should have known, and were on notice of an unofficial policy, practice or custom which permitted the unimpeded, undisciplined and unremediated use of random excessive force and as well as the failure to provide medical attention to inmates under their care, custody and control and condoned, tolerated or acquiesced to such misconduct, as well as tolerating the filing of false reports and testimony given in interviews.

108.    There are multiple examples showing a history of the use of excessive force in DOC facilities both before and after the incident pled in this Complaint, known to the **POLICYMAKER DEFENDANTS**.

109.    On July 13, 2010, Sgt. Kevin Newsom attacked  inmate Bradley Peterson being housed at the New Jersey State Prison by cracking him over the head several times with an expandable metal baton while Peterson was handcuffed, shackled and offering no resistance. Thereafter, Newsom directed his subordinate officer, SCO Israel, to write his Special Custody Reports in such a way that Newsom's misconduct would not be exposed.  On January 9, 2013,

Peterson filed suit, civil action No. 11-2594 (FLW).

110.   Although administrative charges were filed against Newsom who was terminated, the other involved corrections officers suffered no consequences, which further emboldened them to use excessive force on inmates.

111.   In <u>Stokes v. Lanigan,</u> 2012 WL 4662487 (D.N.J. 10/2/12), Jacquar Stokes sued the prior Commissioner of the DOC and others for threats made by corrections officers as well as insufferable prison conditions, putting **HICKS, JOHNSON, GANGI, GEORGE ROBINSON** and **THE ADMINISTRATOR** on notice of misconduct within the state prison system, including NSP.

112.   In 2017 a lawsuit against the prior DOC Commissioner and the DOC, 2017 WL 1050581 (D.N.J. 2017) put DOC officials on notice of allegations by Abdur-Raheem regarding a 2015 incident involving several violations of civil rights including the fabrication of disciplinary proceedings and assault by corrections officers.

113.   On October 13, 2016, the DOC issued a Preliminary Incident Report documenting the excessive use of force on Andrew Nance, an inmate at New Jersey State Prison by a corrections officer. On June 16, 2017, Nance filed suit in the Superior Court of New Jersey, Docket No. MER-L-1209-17, against DOC corrections officers, which include allegations that a guard  knocked him to the floor, kicked and struck him with batons causing fractured ribs, lacerations to his face and scalp, and bruises and abrasions to his arms, legs, torso and head.

114.   An investigation conducted by Director Bonnie Kerness, Rachel Frome, Marshall Rountree, Jean Ross, Esq. and Lydia Thornton of the Prison Watch Community Oversight Initiative shows that on August 11, 2016, a New Jersey State Prison inmate was physically assaulted by a correction officer while other correction officers looked on.

115.   The Prison Watch Community Oversight Initiative published its report in its March 2017 issue.  This report sets forth numerous instances of abuse, including the use of excessive force and the failures to provide medical attention:

a).   Sexual assault is rampant at the Edna Mahon Correctional Facility for Women.   In addition, there are currently several cases in suit involving sexual assault at this facility. *See,* Brown Marianne v. State of New Jersey, MER-L-000503-18, a class action complaint.

b). On November 1, 2016 a prisoner at New Jersey State Prison on constant watch to prevent suicide was challenged to a fight by a corrections officer who, along with other corrections officers, assaulted the inmate without provocation.

c)  Prisoners report that  "assaults by corrections officers are often covered up, by causing calling a suicide code to justify entering a cell without supervision by a Sgt., assaulting a prisoner and then issuing an assault code to justify the prisoner-victims injuries..."

d) On November 4, 2016 corrections officer Daniel was accused of assaulting an inmate by punching him in the face; the inmate remains constantly in pain at the New Jersey State Prison.

e)  On November 8, 2016 a case of excessive force at the Northern State Prison is noted by an inmate who had served his 30 year sentence and was beaten by one or more guards and taken to the infirmary.

f)   On November 14, 2016 a report of sexual assault by officers in Administrative Segregation ("Ad Seg") was made emanating out of Northern State Prison.

g)  On November 14, 2016 a report was made regarding the failure to provide medical attention to an inmate suffering from seizures who also stated that he "watched inmates get stomped out by the [guards] various times in here and most of these nurses and doctors will

cover the stuff up;" at Northern State Prison.

h) It was reported that there are frequent assaults on prisoners at Bayside Prison, racial discrimination and a carefully cultivated culture of fear and retaliation for complaints.

i) On November 22, 2016 a report of prior rape and the failure to provide psychiatric medical attention was made by an inmate at the Central Reception Assignment Facility (CRAF).

116.    On December 13, 2016, Victor Razumov sued a number of Defendants associated with the New Jersey State Prison ("NJSP"), including the State of New Jersey, the DOC, the NJSP, and several administrators as well as the prior DOC Commissioner Gary Lanigan in the District of New Jersey for excessive use of force, failure to provide adequate surveillance of Razumov (who suffered from mental illness), and failure to provide adequate supervision, training, and discipline over Corrections Officers resulting in the loss of both eyes, incidents that occurred in December 2014. See Civil Action No. 3:16-cv-9221 (BRM/TJB).  Counsel for **FONTANEZ** herein represents Razumov.

117.    In or about 2017, Gary Lanigan and a DOC jail administrator were sued in the District of New Jersey by Steven Grieco, an inmate housed alone in Ad Seg at the NJSP, in connection with serious head injuries inflicted on him by NJSP Corrections Officers on March 23, 2015, Civil Action No. 15-7881 (FLW).

118.    In a case very similar to one set forth in this Complaint, on November 19, 2018 inmate  Garreffi was brutally beaten by corrections officers without cause or provocation at Northern State ~~South Woods State~~ Prison after complaining about not getting his proper recreation time.  A Complaint has been filed in the Garreffi matter by counsel representing **FONTANEZ** herein, civil action no:  2:20-cv-16396-MCA-MAH.

119.    **FONTANEZ** was again beat up by guards at South Woods State Prison after being

transferred from Northern State Prison after suffering the beating and injuries alleged in this Complaint for complaining about several conditions of confinement in October 2020; he was sent to New Jersey State Prison for lockdown in Administrative Segregation without any basis and is appealing that decision.   A Notice of Claim has been served by counsel representing **FONTANEZ** herein.

120.    On December 1, 2016 inmate David Goodall was brutally beaten at New Jersey State Prison without cause or provocation by several corrections officers who fractured his jaw requiring surgery, among other injuries after Goodall complained about a food tray. A Complaint has been filed by counsel representing **FONTANEZ** herein, civ. action no. 3:18-cv-16588.

121.    A YouTube video dated February 25, 2009 uploaded on June 24, 2016 shows on camera surveillance New Jersey correctional officers assaulting an inmate without cause or provocation.

122.    On May 22, 2020 inmate Michael Martinez was brutally beaten at Bayside State prison by corrections officers without cause or provocation.  A notice of claim has been filed by counsel representing **FONTANEZ** herein.

123.    On October 11, 2020 inmate Tyler Chainey was brutally beaten suffering eye and other injuries without cause or provocation at South Wood State Prison. A notice of claim has been served by counsel representing **FONTANEZ** herein.

124.    Many other complaints regarding abuse of inmates in the DOC system have been made.   Notice of the use of excessive force has been given by claims brought by Lester Alford, a class action lawsuit by seven (7) prisoners in the 2008 time frame against Governor Corzine and Administrator Michelle Ricci; a June 2010 movie of abuse in New Jersey state prisons and a "Collection of Testimonies of Torture in New Jersey Prisons" by the American Friends Service

Committee in February 2015, among many complaints and claims and lawsuits.

125.   The abuse within the DOC system over the last decade or more is well documented and continues unabated.

126.   The abuses against women including rape, physical abuse and beatings at the Edna Mahon facility for women have been well documented to the point where Governor Murphy has determined to close down the facility this year.  Hearings regarding abuse at Edna Mahon have been the subject of state legislative hearings both pre and post January 6, 2019.

127.   All of these cases also involved allegations of conspiracy to cover up the facts, allegations involving the filing of inaccurate, false or misleading statements by subordinates, the failure to report staff and colleagues' misconduct and the failure to intervene or take action to remediate the misconduct.

128.   Accordingly, defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** were aware and on notice through all of these complaints and claims that these problems existed and have been chronic and continual problems for many years prior to the subject incident.

129.   Defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** had a duty under the state and federal constitution to ensure the safety and welfare of the inmates under their custodial care and provide them with an environment that maintained their right to be free of harm; this included the duty to protect the safety of any inmate and intervene to prevent harm where necessary.

130.   Defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** despite knowledge and notice of the use of excessive force, prison abuse, the failure to provide medical attention and the failure of their

29

subordinates to file accurate reports including the reporting of staff misconduct, have failed and refused to remediate these problems despite clear knowledge that the failure to do so would be and has been substantially certain to lead to severe harm to the inmates under their care, custody and control, including plaintiff **FONTANEZ.**

131.   Defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10**, despite being on notice repeatedly of the use of excessive force, abuse, the failure to provide medical attention and the failure of their subordinates to file accurate reports including the reporting of staff misconduct across the DOC jail facilities, had a duty and obligation to investigate these allegations, commence internal affairs ("SID") investigations, and thereafter provide adequate training, supervision and discipline to the involved corrections officers in order to correct this misconduct, which did not occur.

132.   Defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** permitted, allowed, maintained and ratified a practice, custom and/or policy of failing to train, discipline and supervise corrections officers, including defendants **YOUSSEF, ADAMSON, HERNANDEZ, SOBUN, SGT. ROBINSON, SGT. WILLIAMS, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, BRIGGS, POZO, COLLINS, VICK, VILLAREAL** and **JOHN DOES 1-10** on the use of force, excessive and unjustified force, the circumstances requiring the need for immediate medical attention necessary to protect the safety and welfare of the prison population, how to properly film an extraction or other incident, and the filing of accurate reports including the reporting of staff misconduct, all a direct and proximate cause of the damages to plaintiff **FONTANEZ.**

133.    Defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON,** **THE ADMINISTRATOR** and **JOHN DOES 1-10** failed to implement and enforce policies, procedures and protocols necessary to properly train and supervise their subordinates, including the **CORRECTION OFFICERS** and **SUPERVISOR DEFENDANTS** set forth in paragraph 92 and in the caption, above, in the use of force, the provision of medical attention, how to properly film an extraction or other incident,  the filing of accurate reports including the reporting of staff misconduct, and the need to avoid abuse and to make sure that such policies, procedures and protocols would be effective in avoiding misconduct, and to ferret out misconduct.

134.    ~~At all relevant times herein Defendants~~ **HICKS, JOHNSON, THE ADMINISTRATOR** ~~and~~ **JOHN DOES 1-10** ~~were responsible for the conduct and oversight of corrections officers, including defendants~~ **CORRECTION OFFICERS, SUPERVISORY DEFENDANTS** ~~and~~ **JOHN DOES 1-0** ~~set forth in paragraph 92 and in the caption, above.~~

135.    ~~Defendants~~ **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** ~~and~~ **JOHN DOES 1-10** ~~acted with deliberate and conscious indifference to Plaintiffs' constitutional rights which violations arose out of a pattern, custom, policy or practice of said defendants in allowing and  permitting the use of random, unjustified and excessive force, the failure to provide medical attention, the failure to rectify abuses~~ ~~including the proper filming of an extraction or other incident and the filing of inaccurate reports including the reporting of staff misconduct,~~ ~~among other abuses without discipline or remediation, and in violating the Attorney General's own guidelines pertaining to the use of force as well as internal DOC and NSP guidelines and protocol relating to the use of force, the provision of medical attention,~~ ~~the proper filming  of an extraction or other incident and the filing of official reports requiring the~~

reporting of staff misconduct, knowing with substantial certainty that such conduct would lead to harm and injuries to inmates, including plaintiff **FONTANEZ** herein.

136.    Defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** acted with deliberate and conscious indifference to plaintiffs' constitutional rights which violations arose out of a pattern, custom, policy or practice of said defendants in the failing to enact, enforce or implement policies and procedures on the use of force, the provision of medical attention, the proper filming of an extraction or other incident and the filing of official reports requiring the reporting of staff misconduct, knowing with substantial certainty that such conduct would lead to harm and injuries to inmates, including plaintiff **FONTANEZ** herein.

137.    The failure to discipline and conduct proper Internal Affairs reviews for those officers evidencing misconduct in the use of force, the provision of medical attention, the filming of extractions or other incidents and the filing of inaccurate, false and/or misleading reports including the failure to report staff misconduct evidences deliberate indifference to the likelihood of substantial harm to inmates at the NSP, including plaintiff **FONTANEZ** herein.

138.    The direct actions of defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** in failing to train, supervise, monitor and discipline corrections officers, including the **CORRECTION OFFICERS** and **SUPERVISORY DEFENDANT OFFICERS** previously identified in this Complaint using excessive force, failing to provide medical attention, failing to properly film an extraction or incident and failing to file accurate, truthful reports as well as report on staff and colleagues' misconduct, as well as the failure to enact, propound and/or enforce necessary policy to avoid harm was deliberately indifferent to the constitutional rights of plaintiff **FONTANEZ,** and

32

deprived him of his constitutional due process rights, rights to be free of unlawful seizure, rights of free speech ==and access to the courts, rights to be free of arbitrary and capricious punishment and discipline== and rights to bodily integrity under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution to be vindicated under 42 U.S.C. §1983.

139.   The **POLICYMAKER** defendants **HICKS, JOHNSON, THE ADMINISTRATOR** and **JOHN DOES 1-10** know the identities of these officers and, despite being put on notice with a Notice of Claim, have failed and refused to provide those identities.

140.   The failure to produce and identify these defendants as well as the results of the SID investigation and the investigation itself leaves Plaintiff without the ability to name and timely sue said defendants, amounting to a conspiracy of which each individual **POLICYMAKER DEFENDANT** has taken part and for which each **POLICYMAKER DEFENDANT** is aware.

141.   The persons to be identified include the Administrator(s) of Northern State Prison as of and including  January 6, 2019, as well as all supervising Sergeants, Lieutenants, Captains and Corrections Officers responsible for supervision, monitoring and oversight of the Plaintiff within six (6) months up to the date of the incident on January 6, 2019; those officers responsible for plaintiff's shower privileges, for trashing his cell and for beating him and/or observing or being on notice of the beating but failing to intervene and those responsible for providing medical attention.

142.   The defendants **HICKS, JOHNSON**, **THE ADMINISTRATOR** and **JOHN DOES 1-10** came to a mutual agreement, either express or implied, to perform acts that violated **FONTANEZ'S** federal constitutional rights, specifically to fail to release and provide the identities of all involved actors as heretofore described.

143.   ~~The members of this conspiracy took steps in furtherance of this agreement.~~

144.   ~~The conspiracy was developed with deliberate indifference to deprive **FONTANEZ** of his federal constitutional rights.~~

145.   ~~The foregoing acts of failure to train, supervise, discipline, as well as the failure to promulgate and enforce policy and to engage in a conspiracy to deny Plaintiff his right to effectively identify and pursue each and every state employee involved in the subject events deprived Plaintiff of his rights privileges and immunities secured by the Constitution and laws of the United States.~~

146.   In particular, defendant **MARCUS O. HICKS, ESQ**, as the Acting Commissioner of the DOC, was apprised of all adverse events at the DOC facilities on a regular basis, including complaints and statistics regarding the use of excessive force and complaints regarding failures in medical attention, cover ups, the failure to write and file accurate and proper reports, and the failure to have proper filming or video evidence available in connection with claims of the use of excessive force.

147.   **MARCUS O. HICKS, ESQ.** was at all relevant times aware and had specific knowledge of overall complaints of abuse, use of force and lack of medical attention complaints both from his aides and officials at the DOC and the media including the Star Ledger, who did a detailed study into suicides and abuse throughout the DOC jail system pre-dating the subject events.

148.   **MARCUS O. HICKS, ESQ.** had convened meetings to review allegations of abuse throughout the DOC system, including the use of excessive force at NSP, but failed to see to it that these problems were properly dealt with and remediated.

34

149.   The problems with respect to the use of random, arbitrary, excessive and brutal force continue to occur with regularity despite former Cmr. **HICK's** knowledge and even SID investigations pertaining to same.  The Chainey, Martinez, Goodall and Garreffi cases cited above are perfect examples.

150.   In addition, **MARCUS O. HICKS, ESQ**., has failed and refused to identify and release the names of all the officers involved in the beating and cell incidents; the initial denial of shower privileges and the failure to provide medical attention, as well as to identify the Chief Administrator of Northern State Prison.

151.   Defendant **STEVEN JOHNSON** was the Warden upon information and belief at the Northern State Prison at all relevant times with direct contact with his captains and lieutenants responsible for maintaining order and safety at NSP.

152.   Defendants **ANTHONY GANGI** and **GEORGE ROBINSON** were also, or alternatively, the Warden, Assistant Warden, Superintendants, Administrators or other identified policymakers at the NSP with direct contact with their captains and lieutenants responsible for maintaining order and safety at NSP.

153.   **JOHNSON, GANGI** and **GEORGE ROBINSON** also at all relevant times were aware and had specific knowledge of overall complaints of abuse, use of force, lack of medical attention, cover ups regarding use of force incidents, the failure of subordinates to write and file accurate and proper reports, and the failure to have proper filming or video evidence available in connection with claims of the use of excessive force.

154.   **JOHNSON, GANGI** and **GEORGE ROBINSON** were aware of complaints both from their aides and administrators at NSP, from their direct contact with the inmate population

and reporting from SID, as well as from the media including the Star Ledger, who did a detailed study into suicides and abuse throughout the DOC jail system pre-dating the subject events.

155. Despite their vast knowledge of continued and chronic problems and wrongdoing by corrections officers and field supervisors at NSP, **JOHNSON, GANGI** and **GEORGE ROBINSON** failed to do anything about it.

156. The problems with respect to the use of random, arbitrary, excessive and brutal force continue to occur with regularity despite **JOHNSON, GANGI** and **GEORGE ROBINSON'S** knowledge and even SID investigations pertaining to same.

157. In addition, **JOHNSON** has failed and refused to identify and release the names of all the officers involved in the beating and cell incidents; the initial denial of shower privileges and the failure to provide medical attention, as well as to identify the Chief Administrator of Northern State Prison.

158. The allegations with respect to the **POLICYMAKER DEFENDANTS** described above apply to any **JOHN DOE ADMINISTRATOR** not yet identified or known. **THE ADMINISTRATOR for NORTHERN STATE PRISON** also at all relevant times was aware and had specific knowledge of overall complaints of abuse, use of force and lack of medical attention complaints both from his aides and officials at NSP, from his direct contact with the inmate population and reporting from SID, as well as from the media including the Star Ledger, who did a detailed study into suicides and abuse throughout the DOC jail system pre-dating the subject events.

159. Despite his/her vast knowledge of continued and chronic problems and wrongdoing by corrections officers at NSP, **THE ADMINISTRATOR** failed to do anything about it.

160.    ~~The problems with respect to the use of random, arbitrary, excessive and brutal force continue to occur with regularity despite~~ **THE ADMINISTRATOR'S** ~~knowledge and even SID investigations pertaining to same.~~

161.    ~~**THE ADMINISTRATOR** has failed and refused to identify and release the names of all the officers involved in the beating and cell incidents; the initial denial of shower privileges and the failure to provide medical attention.~~

162.    All of the **POLICYMAKER DEFENDANTS** knew that **CORRECTION OFFICER** and **SUPERVISORY DEFENDANTS ADAMSON, HERNANDEZ, SOBUN, SGT. ROBINSON, SGT. WILLIAMS, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLGHER, VILLAREAL,** BRIG**G**S, ~~CO~~ POZO, ~~CO~~ **COLLINS,** ~~CO~~ **VICK** and **JOHN DOES 1-10** had complaints against them for misconduct and failed to do anything about it, leading to the abject failures of policy and constitutional rights alleged herein.

163.    Notably, defendant **GALLAGHER** is named in the case of Garreffi v. Hicks, 2:20-cv-16396 as having used excessive force in November 19. 2018, prior to the **FONTANEZ** incident.  The Garreffi matter also occurred at Northern State Prison.

164.    The failure to discipline, retrain or terminate the **CORRECTION OFFICER** and **SUPERVISORY DEFENDANTS** or any of the other involved officers upon learning of the subject incident evidences a grave indifference to the constitutional rights of plaintiff **FONTANEZ.**

**Constitutional Violations by the FIELD SUPERVISOR/SUPERVISORY DEFENDANTS.**

165.   Defendant **YOUSSEF**, a high ranking officer and Shift Commander, was on duty during the use of excessive force, trashing of the cell, the failure to permit showers, and all of the events comprising the allegations in this complaint.

166.   **YOUSSEF** was advised by his subordinates, including defendant **SGT. ADAMSON** and/or others, that there was a situation developing involving the refusal of **FONTANEZ** and Vargas to return to their cells, despite being wholly complaint when first requested to go into a holding cell.  **YOUSSEF** made no effort to ascertain what was going on or why.  Instead, he simply ordered two (2) fully suited up extraction teams who, by history, knowledge and understanding, would use extreme force against inmates, and whose appearance would be sure to intimidate, threaten and provoke inmates instead of de-escalating the situation.

167.   **LT. YOUSSEF** made no effort to speak with the inmates or determine whether his subordinate's conduct was the problem, and not the inmates.

168.   **LT. YOUSSEF** either made insufficient inquiry into the situation or knew himself that **COLLINS, VILLAREAL** and others were creating problems, trashing the inmates' cell and refusing to permit them, **FONTANEZ** and Vargas, to take showers as required under protocol, and were and had been generally harassing them.

169.   **LT. YOUSSEF** was a party to the retaliation against **FONTANEZ'**s complaints about the showers and purposefully obtained approval for a suited up army of officers whose goal would be to assault and harm plaintiff **FONTANEZ.**

170.   **LT. YOUSSEF** failed and refused to take control and command of the situation as required under protocol, and was deliberately indifferent to the misconduct among his subordinates and failed to intervene to prevent it, including the trashing of the cell, the failure to

38

properly record the incident, and the excessive use of force.  In the alternative, **LT. YOUSEFF** was a participant in the retaliation and tacitly approved the assault on **FONTANEZ.**

171.   **SGT. ADAMSON** was the supervisor who led one of the extraction teams.  He was directly involved with and observed the use of excessive force upon **FONTANEZ** as aforedescribed.  He participated in the unlawful beating, punching and kicking of **FONTANEZ.**

172.   **SGT ADAMSON** also failed to intervene to prevent the unlawful use of force and beating of the plaintiff.

173.   **SGT ADAMSON** also gave false, inaccurate and misleading evidence to the investigators as his reports and interviews were inconsistent with **DARIUS COLLINS' evidence.** **SGT ADAMSON** knew that **COLLINS** was destroying the cell and failed to report that to his superiors.  **SGT. ADAMSON** claimed to have spoken with **FONTANEZ** after they were "destroying the tier" and after they refused to go into their cell which was inaccurate. **FONTANEZ** denies speaking with **SGT. ADAMSON** about the cell, in fact **FONTANEZ** alleges that he requested a supervisor and that he was denied access to one.

174.   **SGT. ADAMSON** denied knowing that **FONTANEZ** and Vargas had been taken to the holding area, despite reports that it was there that **ADAMSON** spoke to **FONTANEZ.**

175.   **SGT. ADAMSON** was a party to the retaliation against **FONTANEZ'**s complaints about the showers and tacitly approved the assault on **FONTANEZ.**

176.   **SGT. ERNESTO HERNANDEZ** was the supervisor who led one of the extraction teams.  He was directly involved with and observed the use of excessive force upon **FONTANEZ** as aforedescribed.  He participated in the unlawful beating, punching and kicking of **FONTANEZ.  HERNANDEZ** struck **FONTANEZ** in the legs with his baton, such force being unnecessary to address prison safety or to subdue **FONTANEZ.**

177.   **SGT. HERNANDEZ** also failed to intervene to prevent the unlawful use of force and beating of the plaintiff.

178.   **SGT. HERNANDEZ** knew that **COLLINS, VILLAREAL** and others were destroying the cell and were the cause of the incident, but failed to report it or intervene to prevent/stop it.

179.   **SGT. HERNANDEZ** was a party to the retaliation against **FONTANEZ'**s complaints about the showers and tacitly approved the assault on **FONTANEZ.**

180.   **LT. BRIAN SOBUN** was a high ranking officer  on duty during the subject events.

181.   **LT. SOBUN** made no effort to speak with the inmates or determine whether his subordinate's conduct was the problem, and not the inmates.

182.   **LT. SOBUN** either made insufficient inquiry into the situation or knew himself that **COLLINS, VILLAREAL** and others were creating problems, trashing the inmates' cell and refusing to permit them, **FONTANEZ** and Vargas, to take showers as required under protocol, and were and had been generally harassing them.

183.   **LT. SOBUN** was a party to the retaliation against **FONTANEZ'**s complaints about the showers and tacitly approved the assault on **FONTANEZ.**

184.   **LT. SOBUN** failed and refused to take control and command of the situation as required under protocol, and was deliberately indifferent to the misconduct among his subordinates and failed to intervene to prevent it, including the trashing of the cell, the failure to properly record the incident, and the excessive use of force.

185.   **LT. SOBUN** was responsible for covering up and intentionally creating the false version of events involving defendant **SGT. ROBINSON'S** mishaps with the camera.  **SOBUN**

falsely claimed that **ROBINSON** had dropped it and that it malfunctioned, causing **ROBINSON** not to be able to film the incident. **LT. SOBUN'S** evidence in this regard was found to be wrong by the internal affairs investigators, who found that the camera did not show any malfunction and that there was no indication from the footage that it had been dropped.

186.   **LT. SOBUN** personally participated in giving inaccurate, false and misleading evidence, covered-up the brutal beating of **FONTANEZ**, and failed to intervene to prevent the misconduct of his subordinates.

187.   Defendants **SGT. ROBINSON** and **SGT. WILLIAMS**, in failing and refusing to properly film the incident/extraction as required, purposely aided in the cover-up and loss of critical evidence needed to support **FONTANEZ'**s claims in this case and in connection with his administrative charges and discipline.

188.   Each of these **FIELD SUPERVISOR DEFENDANTS** knew that they were violating the clearly established constitutional rights of the plaintiff and engaged in the subject misconduct notwithstanding such knowledge.

**Constitutional Violations by The Individual Correction Officer defendants**

189.   Defendants **BRIGGS, POZO, COLLINS, VICK, BALTIMORE, O'NEILL, SOLANZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER** and **JOHN DOES 1-10** were all direct participants in the beating, retaliated against Plaintiff **FONTANEZ** for complaining about not obtaining his shower privileges, trashed his cell or knew it was being trashed, failed to provide medical attention after beating plaintiff up, gave inaccurate, false or misleading evidence as to the beating and the cause of plaintiff's actions, failed to intervene to prevent the abuse and failed to report misconduct to their superiors.and has failed to release the

41

names of his fellow officers involved in these events, including the beating, of which **BRIGS** has personal knowledge.

190.    Defendant **VILLAREAL**, who, upon information and belief did not participate in the beating, was involved with and did participate in the continuing refusal to permit **FONTANEZ** and Vargas shower privileges to which they were entitled, trashed their cell or knew it was being trashed, failed to provide medical attention after beating plaintiff up, gave inaccurate, false or misleading evidence as to the beating and the cause of plaintiff's actions, failed to intervene to prevent the abuse and failed to report misconduct to his superiors.

191.    Defendant **COLLINS**, in addition to the above, chronically and continuously harassed the plaintiff, denied him shower privileges to which he was entitled, went to the supply cabinet to get the disinfectant, bleach and toxic substances which he used to destroy the habitability of **FONTANEZ**'s cell, by his actions instigated the incident that led to the beating, and refused to allow **FONTANEZ** to speak to a supervisor.

192.    An inmate gave a statement that **FONTANEZ** and his cellmate had requested to speak to a supervisor about the situation to which Officer Collins replied "hell no," after which the suited up and other officers arrived and commenced the attack on **FONTANEZ.**

193.    **CO POZO** was a direct participant in the beating, retaliated against Plaintiff **FONTANEZ** for complaining about not obtaining his shower privileges, trashed his cell,  failed to provide medical attention after beating plaintiff up and has failed to release the names of his fellow officers involved in these events, including the beating, of which **CO POZO** has personal knowledge.

194.    **CO COLLINS** was a direct participant in the beating, retaliated against Plaintiff **FONTANEZ** for complaining about not obtaining his shower privileges, trashed his cell,  failed

~~to provide medical attention after beating plaintiff up and has failed to release the names of his fellow officers involved in these events, including the beating, of which **CO COLLINS** has personal knowledge.~~

~~195.    **CO VICK** was a direct participant in the beating, retaliated against Plaintiff **FONTANEZ** for complaining about not obtaining his shower privileges, trashed his cell,  failed to provide medical attention after beating plaintiff up and has failed to release the names of his fellow officers involved in these events, including the beating, of which **CO VICK** has personal knowledge.~~

~~196.    **JOHN DOES 1-10**  were direct participants in the beating, retaliated against Plaintiff **FONTANEZ** for complaining about not obtaining his shower privileges, trashed his cell, failed to provide medical attention after beating plaintiff up and have failed to release the names of their fellow officers involved in these events, including the beating, of which **JOHN DOES 1-10** have personal knowledge.~~

197.    In addition to the use of excessive force and misconduct aforedescribed, Plaintiff further alleges a conspiracy to cover up and deny Plaintiff **FONTANEZ** his First Amendment right to access to the courts as well as causing arbitrary and capricious charges to be brought and punishment meted out ~~by failing to identify each officer involved in all incidents and events, including the subject beating, trashing of the cell, those involved in denying showering privileges without cause or basis and the failure to provide medical attention, as well as the failure to give plaintiff his recreation rights.~~ by the filing of inaccurate, false and misleading official reports and interviews and failing to report employee and staff misconduct by the defendants **CORRECTIONS OFFICERS** and **SUPERVISORY DEFENDANTS**, each and every one of whom knew about the trashing of the cell and the complaints of **FONTANEZ** and his cellmate

and the inhabitability of the cell after disinfectant, bleach and other toxic chemicals and substances were poured all over it by defendant **COLLINS, VILLAREAL** and others, the use of excessive and unnecessary force in the handling of **FONTANEZ** and his cellmate, by permitting and allowing a false story to be concocted about why **SGT. ROBINSON** was unable to properly film the use of force and the incident and failing to report the precipitating cause as to why **FONTANEZ** and his cellmate refused to go back into their cell.

198.   The direct and proximate result of the aforedescribed conspiracy and cover up, of which each individual **CORRECTIONS OFFICER** and **SUPERVISORY OFFICER DEFENDANTS** were aware,  was that (1) Plaintiff **FONTANEZ** was charged without cause for internal violations of policy resulting in arbitrary punishment including Administrative Segregation and loss of privileges and (2) Plaintiff **FONTANEZ** has a reduced and more limited ability to effectively prove his claims asserted in this Complaint and present evidence as such was intentionally limited, avoided and/or destroyed.

199.   These activities constitute violations of constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, along with the unlawful seizure under the Fourth Amendment for the use of excessive force.

**Common Allegations for both the Correction and Supervisory Defendants**

200.   Any officer engaged in this wrongdoing would know that he is violating the clearly established rights of the plaintiff.  In addition, the **POLICYMAKER DEFENDANTS** would know that their actions in permitting and allowing unlawful conduct to exist and persist within the jail without remediation or proper training and supervision would be substantially certain to lead the misconduct alleged in this case and would violate  the clearly established rights of the plaintiff.

44

201.   Each of these defendants individually knew that beating plaintiff unprovoked without any need to control the prison population or stop violence is a clearly established violation of the Fourth and Fourteenth Amendments.

202.   Each of these defendants individually knew that retaliation against plaintiff for complaining about lack of shower privileges without cause or basis would be a violation of clearly established rights to be free of arbitrary and capricious action under the Fourteenth Amendment.

203.   Each of these defendants individually knew that failing to provide needed medical attention after fracturing plaintiff's leg among other injuries would be a violation of clearly established rights to be free from cruel and unusual punishment under the Eighth and/or Fourteenth Amendment and/or a violation of due process under the Fifth and Fourteenth Amendments.

204.   Each of these defendants individually knew that covering up the use of excessive force, and not identifying all persons involved in the beating the trashing of the cell,  retaliation, failure to provide medical attention and the provision of false, inaccurate and misleading reports and evidence as to the happening of the incident would be a violation of a clearly established right under the First Amendment to access to the courts and under the Fifth, Eighth and Fourteenth Amendments proscribing arbitrary punishment.

205.   As a direct and proximate result of the violation of constitutional rights as aforedescribed by defendants **HICKS, JOHNSON, GANGI, GEORGE ROBINSON, THE ADMINISTRATOR, LT. YOUSSEF,   SGT. ADAMSON, SGT. HERNANDEZ, LT. SOBUN, SGT. ROBINSON, SGT. WILLIAMS,   BRIGGS, POZO, COLLINS, VICK, VILLAREAL,   BALTIMORE,   O'NEILL,   SOLAZANO,   MASCHANG,   OLEKA,**

SIMMONS, GALLAGHER, and **JOHN DOES 1-10,** plaintiff **FONTANEZ** has sustained

serious, severe, and permanent personal and psychological injuries.

206.   **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment

against defendants against Defendants, **MARCUS O. HICKS, ESQ., COMMISSIONER OF

THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and

individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN

JOHNSON, in his official and individual capacities, ASSISTANT SUPERINTENDANT

ANTHONY GANGI, in his official and individual capacities, NORTHERN STATE

PRISON ADMINISTRATOR GEORGE ROBINSON, in his official and individual

capacities,** "JOHN DOE" ADMINISTRATOR of the **NORTHERN SATE PRISON,** in

his/**her** official and individual capacities, **LT. EMMANUEL YOUSSEF, in his official and

individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities,

SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN

SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official

and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual

capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and

individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and

individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and

individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and

individual capacities, CORRECTION OFFICER ERIC OLEKA, in his official and

individual capacities,  CORRECTION OFFICER EDWIN SIMMONS, in his official and

individual capacities,  CORRECTION OFFICER WILLIAM GALLAGHER, in his official

and individual capacities,** CORRECTION**S** OFFICER RONDELL BRIG**G**S, in his official

and individual capacities, **CORRECTIONS OFFICER ALGENI POZO, in his official and** individual capacities, **CORRECTIONS OFFICER DARIUS COLLINS, in his official and** individual capacities, **CORRECTIONS OFFICER EUGENE VICK, in his official and** individual capacities, **CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities** and **CORRECTIONS OFFICERS JOHN DOES 1-10** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

## SECOND COUNT
*(42 U.S.C. §1983 for Failure to Intervene)*

207.   Plaintiff repeats and realleges each and every paragraph contained in this Complaint and incorporates same as if set forth fully herein at length.

208.   The actions of the **CORRECTION OFFICER DEFENDANTS BRIGGS, POZO, COLLINS, VICK, VILLAREAL, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, SUPERVISORY DEFENDANTS LT. YOUSSEF, SGT.ADAMSON, SGT. HERNANDEZ,  LT. SOBUN, SGT. ROBINSON, SGT. WILLIAMS** and  **JOHN DOES 1-10** were taken under color of state law.

209.   These defendants had a legal duty to protect **FONTANEZ** from harm.

210.   These defendants failed to intervene, summon help or take other precautionary measures to prevent and/or stop any other Defendant from causing harm to **FONTANEZ**.

211.   These defendants had the opportunity to intervene while **FONTANEZ** was being beaten as, with the exception of **YOUSSEF** they were all present during the beating and assault and, with the exception of **YOUSSEF, VILLAREAL**, **SGT. ROBINSON** and **SGT. WILLIAMS**,  participated in it.

212.   **YOUSSEF, VILLAREAL, SGT. ROBINSON** and **SGT. WILLIAMS**, however,

47

knew about the trashing of the cell, the disturbance resulting from it, were aware of the implementation of extraction teams and the substantial likelihood of violence and had a duty to intervene to stop it and the beating from occurring.

213.    These defendants intentionally elected not to intervene.

214.    Defendants **BRIGGS, POZO, COLLINS, VICK, VILLAREAL, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, LT. YOUSSEF, SGT. ADAMSON, SGT. HERNANDEZ, LT. SOBUN, SGT. ROBINSON, SGT. WILLIAMS** and **JOHN DOES 1-10** violated **FONTANEZ'S** rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

215.    As a direct and proximate result of Defendants' constitutional violations as aforedescribed, **FONTANEZ** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

216.    By reason of the foregoing **FONTANEZ** has been damaged.

217.    **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment against defendants against Defendants **LT. EMMANUEL YOUSSEF, in his official and individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and**

48

individual capacities, **CORRECTION OFFICER ERIC OLEKA, in his official and individual capacities, CORRECTION OFFICER EDWIN SIMMONS, in his official and individual capacities, CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities,** CORRECTION**S** OFFICER RONDELL BRIG**GS**, in his official and individual capacities, CORRECTION**S** OFFICER **ALGENI** POZO, in his official and individual capacities, CORRECTION**S** OFFICER **DARIUS** COLLINS, in his official and individual capacities, CORRECTION**S** OFFICER **EUGENE** VICK, in his official and individual capacities, **CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities** and CORRECTION**S** OFFICERS JOHN DOES 1-10 jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

## THIRD COUNT
### (*N.J.S.A.* 10:6-2:New Jersey Civil Rights Act)

218.   Plaintiff repeats and realleges each and every paragraph contained in this Complaint and incorporates same as if set forth fully herein at length.

219.   **FONTANEZ** has a state substantive due process liberty interest under the New Jersey State Constitution Article 1, §1 to be free from egregiously abusive physical conduct by law enforcement officers.

220.   **FONTANEZ** had a right under the New Jersey State Constitution Article 1, §1 to be free from unreasonable seizures.

221.   **FONTANEZ** had a right under the New Jersey State Constitution Article 1, §1 to be free of retaliation for requesting any benefits due to him, here the right to shower as an inmate, and to be free to pursue legal claims by accessing the court without impediment.

222.   **FONTANEZ** had a right under the New Jersey Constitution, Article 1, §1 to be

free from arbitrary and capricious punishment based on false, misleading and inaccurate official reports, testimony and allegedly broken or malfunctioning equipment designed to capture the event.

223. Defendants' actions were taken under color of state law.

224. Defendants, to the same extent and pursuant to the same facts as set forth in the First Count herein and the Factual Allegations contained herein, individually and through their agents, servants and employees, and by their deliberate indifference to the civil rights of **FONTANEZ** as previously detailed, deprived **FONTANEZ** of his rights, privileges and immunities secured under Article I, ¶1 of the New Jersey State Constitution and under N.J.S.A. 10:6-2, the New Jersey Civil Rights Act (the "NJCRA").

225. Defendants acted pursuant to official or unofficial policy and/or custom to deprive **FONTANEZ** of his constitutional rights by actions that were willful, deliberate and malicious.

226. By reason of the foregoing, Defendants violated the civil rights of **FONTANEZ.**

227. As a direct and proximate result of Defendants' constitutional violations as aforedescribed, **FONTANEZ** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

228. By reason of the foregoing **FONTANEZ** has been damaged.

229. **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment against defendants against Defendants, **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, ASSISTANT SUPERINTENDANT ANTHONY GANGI, in his official and individual capacities, NORTHERN STATE**

**PRISON ADMINISTRATOR GEORGE ROBINSON, in his official and individual capacities,** "JOHN DOE" ADMINISTRATOR of the NORTHERN SATE PRISON, in his/**her** official and individual capacities, **LT. EMMANUEL YOUSSEF, in his official and individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and individual capacities, CORRECTION OFFICER ERIC OLEKA, in his official and individual capacities, CORRECTION OFFICER EDWIN SIMMONS, in his official and individual capacities, CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities,** CORRECTION**S** OFFICER RONDELL BRIG**G**S, in his official and individual capacities, CORRECTION**S** OFFICER **ALGENI** POZO, in his official and individual capacities, CORRECTION**S** OFFICER **DARIUS** COLLINS, in his official and individual capacities, CORRECTION**S** OFFICER **EUGENE** VICK, in his official and individual capacities, **CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities** and CORRECTION**S** OFFICERS JOHN DOES 1-10 jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

## FOURTH COUNT
### (Negligence)

51

230.   Plaintiff repeats and realleges each and every allegation contained in this Complaint as if set forth fully herein at length.

231.   At all relevant times herein Defendants were under a duty to act reasonably in the performance of their duties as administrators, wardens, supervisors, and corrections officers in the control, maintenance, operation, handling and management of the jail and correctional facilities and in  the provision of medical care and treatment,  in properly supervising and monitoring **FONTANEZ**,  in following and promulgating appropriate policies and procedures with respect to excessive force, the rendering of medical services, the filing of official reports and reporting misconduct,  and to intervene to avoid and prevent physical and psychological harm to prisoners from occurring, and in providing proper training to those with the responsibility for the care and management of those under custodial or hospital care.

232.   All Defendants were under a duty to take proper action to avoid abuse and the use of excessive force.

233.   In particular, the **POLICYMAKER DEFENDANTS HICKS, JOHNSON**, **GANGI, GEORGE ROBINSON**, the **ADMINISTRATOR** and **JOHN DOES 1-10** had a duty of reasonable care in the hiring, training, supervision and oversight of its corrections officers and to ensure that their subordinates did not harm inmates, including plaintiff **FONTANEZ** as well as in their promulgation and enforcement of policies designed to ensure inmate safety.

234.   In particular, defendants **YOUSSEF, ADAMSON, HERNANDEZ, SOBUN, SGT. ROBINSON, SGT. WILLIAMS, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, VILLAREAL, BRIGGS, POZO, COLLINS, CO VICK** and **JOHN DOES 1-10** had a duty of reasonable care in the handling and

oversight of inmates, to ensure their safety and that they remain free from harm and protected from harm, including plaintiff **FONTANEZ**.

235.   All Defendants, having undertaken a duty to house and care for inmates, were obligated to have performed their duties reasonably and so as to not cause any physical or psychological harm to inmates, including **FONTANEZ**.

236.   The **POLICYMAKER DEFENDANTS** and **JOHN DOES 1-10** breached their duty of care and were each negligent and careless in their failure to properly hire, retain, train, discipline and supervise correctional officers, staff, employees, agents, and servants with respect to the use of force, retaliation, medical attention and conspiracy/cover up and in their failure to properly implement, enact, enforce, follow and maintain proper protocol, policy, procedures, rules and guidelines; in their failure to intervene to prevent the use of excessive  force, retaliation, and interference with provision of medical care to **FONTANEZ** and other abuses  as described in this complaint, in their failure to prevent the harm, in their failure to manage and operate their facilities in a reasonable manner so as to prevent the subject incident, and were negligent and careless in the performance of their duties, to which no immunity applies.

237.   Defendants  **YOUSSEF, ADAMSON, HERNANDEZ, SOBUN, SGT. ROBINSON, SGT. WILLIAMS, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, VILLAREAL, BRIGGS, POZO, COLLINS, VICK** and **JOHN DOES 1-10**  were each negligent and careless in failing to follow policies and procedures, in their use of force, failure to provide medical attention, failure to give plaintiff his shower privileges, trashing his cell, ~~in failing to identify all officers involved in the subject events~~ in failing to provide accurate official reports and evidence, in failing to properly record and film the incident/extraction, in inappropriately charging plaintiff with administrative violations and

53

imposing punishment and were negligent and careless in the performance of their ministerial duties, to which no immunity applies.

238.   The actions of Defendants did not involve the exercise of professional judgment or discretion.

239.   The personal injuries and damages suffered by **FONTANEZ** were caused solely as a result of the negligence and carelessness of Defendants, individually and collectively.

240.   As a direct and proximate result of Defendants' negligence as aforedescribed, **FONTANEZ** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

241.   By reason of the foregoing **FONTANEZ** has been damaged.

242.   All conditions precedent to filing suit under Title 59 have been met, including medical expense limits, objective permanent injury and the filing of notices of claims.

243.   **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment against defendants against Defendants, **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, ASSISTANT SUPERINTENDANT ANTHONY GANGI, in his official and individual capacities, NORTHERN STATE PRISON ADMINISTRATOR GEORGE ROBINSON, in his official and individual capacities,** "JOHN DOE" ADMINISTRATOR of the NORTHERN SATE PRISON, in his/her official and individual capacities, **LT. EMMANUEL YOUSSEF, in his official and individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN**

SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and individual capacities, CORRECTION OFFICER ERIC OLEKA, in his official and individual capacities,  CORRECTION OFFICER EDWIN SIMMONS, in his official and individual capacities,  CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities, CORRECTIONS OFFICER RONDELL BRIGGS, in his official and individual capacities, CORRECTIONS OFFICER ALGENI POZO, in his official and individual capacities, CORRECTIONS OFFICER DARIUS COLLINS, in his official and individual capacities, CORRECTIONS OFFICER EUGENE VICK, in his official and individual capacities, CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10 jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

## FIFTH COUNT
### (Intentional Infliction of Emotional Distress)

244.    Plaintiff repeats and realleges each and every allegation contained in this Complaint as if set forth fully herein at length.

245.    Defendants ~~CORRECTIONS DEFENDANTS CO~~ YOUSSEF, ADAMSON, HERNANDEZ, SOBUN, SGT. ROBINSON, SGT. WILLIAMS, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, VILLAREAL,

**BRIGGS, POZO, COLLINS, VICK** and **JOHN DOES 1-10** whose individual actions are detailed in this complaint, engaged in actions intended to inflict severe emotional trauma upon **FONTANEZ,** and did so**.**

246.    The emotional distress was severe and outrageous.

247.    The emotional distress was of such character that no reasonable person could be expected to endure it.

248.    In particular, **FONTANEZ** was subjected by these defendants to a brutal assault, intentionally ruining his cell with noxious fumes and destroying it so **FONTANEZ** could not safely return or enter it, a conspiracy to suit up and cover their identities in order to commence the beating, spoil and avoid the taking of critical evidence, filing inaccurate, misleading and false reports and evidence and otherwise subjected **FONTANEZ** to injuries and damages which were intentional and meant to inflict both severe as well as emotional and psychological trauma.

249.    By reason of the aforesaid intentional emotional distress, **FONTANEZ** was caused to suffer pain, suffering, humiliation, embarrassment and anguish, all to his damage.

250.    By reason of the foregoing **FONTANEZ** has been damaged.

251.    **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment against defendants against Defendants **LT. EMMANUEL YOUSSEF, in his official and individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and**

individual capacities, **CORRECTION OFFICER KENNY SOLAZANO, in his official and individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and individual capacities, CORRECTION OFFICER ERIC OLEKA, in his official and individual capacities, CORRECTION OFFICER EDWIN SIMMONS, in his official and individual capacities, CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities,** CORRECTIONS OFFICER RONDELL BRIGGS, in his official and individual capacities, CORRECTIONS OFFICER ALGENI POZO, in his official and individual capacities, CORRECTIONS OFFICER DARIUS COLLINS, in his official and individual capacities, CORRECTIONS OFFICER EUGENE VICK, in his official and individual capacities, **CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities** and CORRECTIONS OFFICERS JOHN DOES 1-10 jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

## <u>SIXTH COUNT</u>
**(Assault and Battery)**

252.   Plaintiff repeats and realleges each and every allegation in the Complaint as if set forth fully herein at length.

253.   As set forth in detail above, **FONTANEZ** was subjected to the use of excessive force, including force that resulted multiple rib fractures, a broken nose and a broken leg.

254.   The beating that comprised the excessive force and caused the foregoing injuries meets the definition of assault and battery under New Jersey common law and the criminal code.

255.   As a direct and proximate result of the assault and battery, **FONTANEZ** was caused to be placed in fear of physical harm and was subjected to physical harm.

256.   The aforedescribed damages and injuries were caused solely and wholly by the

intentional and willful assault and battery by **ADAMSON, HERNANDEZ, SOBUN, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, VILLAREAL,** BRIG**G**S, POZO, COLLINS, VICK and **JOHN DOES 1-1**

257.    As a direct and proximate result of defendants' assault and battery as aforedescribed, **FONTANEZ** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

258.    **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment against defendants **SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN SOBUN, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and individual capacities, CORRECTION OFFICER CESAR MASCHANG, in his official and individual capacities, CORRECTION OFFICER ERIC OLEKA, in his official and individual capacities, CORRECTION OFFICER EDWIN SIMMONS, in his official and individual capacities, CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities,** CORRECTION**S** OFFICER RONDELL BRIG**G**S, in his official and individual capacities, CORRECTION**S** OFFICER **ALGENI** POZO, in his official and individual capacities, CORRECTION**S** OFFICER **DARIUS** COLLINS, in his official and individual capacities, CORRECTION**S** OFFICER **EUGENE** VICK, in his official and individual capacities and CORRECTION**S** OFFICERS JOHN DOES 1-10 jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

## SEVENTH COUNT
### (common law conspiracy)

259.    Plaintiff repeats and realleges each and every paragraph contained in this Complaint and incorporates same as if set forth fully herein at length.

260.    Defendants both the **POLICYMAKER DEFENDANTS HICKS, JOHNSON, JOHN DOES 1-10** and the **YOUSSEF, ADAMSON, HERNANDEZ, SOBUN, SGT. ROBINSON, SGT. WILLIAMS, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, VILLAREAL, BRIGGS, POZO, COLLINS, VICK** and **JOHN DOES 1-10,** each and every one of them, did conspire, act in concert together, and agree among themselves to cause injury and damage to and commit unlawful acts against plaintiff by failing to disclose the names and identities of those officers involved in the initial refusal to grant shower privileges, those officers involved in destroying and trashing plaintiff's cell, the beating and the failure to provide medical attention, in engaging in a cover-up of the beating, in concocting a false version of events as to the operation of the cameras which were supposed to be filming the extraction/incident and in the filing of false, inaccurate or misleading official reports and evidence. as well as refuse and fail to release the SID Investigation into the subject incident and the results thereof.

261.    Each of the above mentioned defendants understood the objectives of the conspiracy scheme and accepted them, and agreed, implicitly or explicitly, to each do his part to further them.

262.    The purpose of the conspiracy was to deny or limit plaintiff's ability to proffer truthful evidence from the officers regarding misconduct thus reducing the value of this case, to

permit him to be punished and to hide or obfuscate the use of excessive force and limit his ability to present a full and complete excessive force claim against those who beat and assaulted him.

263.    By reason of the foregoing, and as a direct and proximate result of the conspiracy of, and the actions of the Defendants, Plaintiffs suffered damages, including improper charges and punishment, severe emotional distress, loss of reputation and loss of the ability to effectively pursue litigation and hold defendants accountable.

264.    In addition, Defendants **ADAMSON, HERNANDEZ, SOBUN, BALTIMORE, O'NEILL, SOLAZANO, MASCHANG, OLEKA, SIMMONS, GALLAGHER, VILLAREAL, BRIGGS, POZO, COLLINS, VICK** and **JOHN DOES 1-10,** conspired amongst and between themselves by using a code or other form of communication to beat and assault the plaintiff, to "teach him a lesson" for complaining, and to cause serious harm.

265.    Each defendant understood the means, the terms and the purposes of the conspiracy.

266.    By reason of the foregoing, Plaintiff has been damaged.

267.    **WHEREFORE**, Plaintiff **ANTHONY T. FONTANEZ** demands judgment against defendants against Defendants **LT. EMMANUEL YOUSSEF, in his official and individual capacities, SGT. PAUL ADAMSON, in his official and individual capacities, SGT. ERNESTO HERNANDEZ, in his official and individual capacities, LT. BRIAN SOBUN, in his official and individual capacities, SGT. QIANA ROBINSON, in her official and individual capacities, SGT. RICARDO WILLIAMS, in his official and individual capacities, CORRECTION OFFICER JEREMY BALTIMORE, in his official and individual capacities, CORRECTION OFFICER CARL O'NEILL, in his official and individual capacities, CORRECTION OFFICER KENNY SOLAZANO, in his official and**

individual capacities, **CORRECTION OFFICER CESAR MASCHANG, in his official and** individual capacities, **CORRECTION OFFICER ERIC OLEKA,** in his official and individual capacities, **CORRECTION OFFICER EDWIN SIMMONS, in his official and** individual capacities, **CORRECTION OFFICER WILLIAM GALLAGHER, in his official and individual capacities,** CORRECTIONS OFFICER RONDELL BRIGGS, in his official and individual capacities, CORRECTIONS OFFICER ALGENI POZO, in his official and individual capacities, CORRECTIONS OFFICER DARIUS COLLINS, in his official and individual capacities, CORRECTIONS OFFICER EUGENE VICK, in his official and individual capacities, **CORRECTION OFFICER ROBERTO VILLAREAL, in his official and individual capacities** and CORRECTIONS OFFICERS JOHN DOES 1-10 jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  August 5, 2021

By: _____
SHELLEY L. STANGLER, ESQ.

## DEMAND FOR A "LITIGATION HOLD"

Plaintiff, **ANTHONY T. FONTANEZ,** demands that each and every Defendant protect and preserve any and all documents and electronic files, including emails and text messages, that refer or relate to **ANTHONY T. FONTANEZ**; any and all training materials created or used by NSP between 2013 and the present;  the correction manual in effect during the times set forth in this Complaint;  all files that refer or relate to Defendants' investigation into  any incidents or changes pertaining to **ANTHONY T. FONTANEZ**; all internal affairs and/or investigation files that refer or relate to any incidents involving  Plaintiff or any The Defendants; and any and all other matters at issue in this litigation.  If there is any policy or procedure to automatically destroy documents or electronic files, including emails, after a

specified time period to immediately suspend said policy and procedure until the conclusion of this case.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  August 5, 2021                    By: _____
                                          SHELLEY L. STANGLER, ESQ.

## DEMAND TO IDENTIFY ALL "JOHN DOE" DEFENDANTS

Plaintiff, **ANTHONY T. FONTANEZ** demands that, within 15 days of service of this complaint that Defendants provide the full name and address of (i) all "John Doe" officers involved in any of the event(s) or incident(s) and wrongdoing alleged in the complaint, including the administrator in charge of the Northern State Prison during the subject period, so that service can be effectuated within the 90 days Rule 4m period and in accordance with R.15(c).

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  August 5, 2021                    By: _____
                                          SHELLEY L. STANGLER, ESQ.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  August 5, 2021                    By: _____
                                          SHELLEY L. STANGLER, ESQ.

## DESIGNATION OF TRIAL COUNSEL

**SHELLEY L. STANGLER, ESQ**. is hereby designated as trial counsel on behalf of the plaintiff in the within matter.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  August 5, 2021                    By: _____

SHELLEY L. STANGLER, ESQ.

## CERTIFICATION

1.      The firm of SHELLEY L. STANGLER, P.C. has been retained to represent Plaintiff, **ANTHONY T. FONTANEZ** in connection with the within matter.  I am an attorney assigned to the case.

2.      The matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated by plaintiff.

3.      Other than "John Does," there are no other parties who should be joined in this action.

4.      I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated: August 5, 2021                    By: _____

SHELLEY L. STANGLER, ESQ.

63